WELCH & COMPANY, Complainants,

*v.*

CENTRAL SAN CRISTOBAL, INC., Dft.

---

San Juan, Equity, No. 940.

CLAIM FOR RENT.

**Rents—Priority.**

> A lessee is entitled to preference for the payment of rent due during the month preceding the receivership for property from which the receiver gathered a crop for the benefit of the fund; but lessee is not entitled to preference for six months' rent for a house used by defendant as a club annex.

Opinion filed July 19, 1915.

---

*Mr. Frank Antonsanti* for Garzot, claimant.

*Mr. H. G. Molina* for Welch & Company, objector.

HAMILTON, Judge, delivered the following opinion:

1. In this matter the master reported on May 19, 1915, allowing petitioner Garzot rent of estate "Fortuna" for the

---

NOTE.—As to priority of claim for rent of property in hands of receiver over recorded liens, see notes in 2 L.R.A.(N.S.) 1030, 1044, 1060, 1066; 41 L.R.A.(N.S.) 700, 710.

Welch & Co. v. Central San Cristobal.

month of August, 1913, as per contract, $495. His report was excepted to and the matter was argued not so much upon the merits as upon the fact that Garzot had not filed any formal petition or made any equitable attachment. The exceptions do not point out any evidence adverse to the master's finding, and so the court under the rules must take the finding of facts as supported by the evidence. It would seem that the receiver properly took possession of the land in question, upon which was growing a crop of sugar cane, and in due course of time reduced the cane to sugar, and sold it. The claim is for rental. The court would be unwilling to exact strict legal proceedings where the receiver had received the benefit of land, as in the case in question. If the land is retained, rent should be paid for it, provided it is shown that a crop was gathered from it for the benefit of the fund. All this seems to be implied in the master's report, and it is, therefore, confirmed. Welch & Co. v. Central San Cristobal, 7 Porto Rico Fed. Rep. 205.

2. The master also reported $84 for rent of house used by the central as a club annex for six months. This would stand on a different footing from the last item, as there was no crop grown, and there is no showing that the fund otherwise got the benefit of the property. The master says that "the club house was part of the curtilage, it was a necessity for the housing of the employees, which housing was a part of their *quid pro quo* of compensation." This was no doubt a proper expense for the central, but no rule of law is apparent why it should carry a lien. The objection to the master's report is, therefore, sustained so far as it finds that the claim should have a preference.

It is so ordered.